# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CHARMAINE LORETTA
   ANDERSON,

         Appellant,

     v.

DEPARTMENT OF HEALTH AND
   HUMAN SERVICES,

         Agency.

DOCKET NUMBERS
DC-0752-16-0845-I-1
DC-0752-16-0738-W-1
DC-0752-17-0129-I-1

DATE: March 24, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Charmaine Loretta Anderson</u>, Germantown, Maryland, pro se.

<u>Sariana Garcia-Ocasio</u>, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member[2]

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] Member Leavitt's name is included in decisions on which the three-member Board completed the voting process prior to his March 1, 2023 departure.

**FINAL ORDER**

¶1    The appellant has petitioned for review of the initial decisions, which dismissed these appeals for lack of jurisdiction.[3]  Generally, we grant petitions such as these only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in these appeals, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petitions for review.  Therefore, we DENY the petitions for review.  Except as expressly MODIFIED by this Final Order to VACATE the findings in the January 12, 2017 initial decision concerning the voluntariness of the appellant's separation from service, we AFFIRM the initial decisions.

**BACKGROUND**

¶2    The appellant was a GS-9 Program Analyst with the agency. *Anderson v. Department of Health and Human Services*, MSPB Docket No. DC-0752-16-0845-I-1, Initial Appeal File (0845 IAF), Tab 18 at 21. On January 22, 2014, her supervisor proposed her removal based on a charge of

---

[3] Pursuant to 5 C.F.R. § 1201.36, we GRANT the appellant's motion and JOIN these three appeals for adjudication because joinder will expedite processing and will not prejudice any party. *Anderson v. Department of Health and Human Services*, MSPB Docket No. DC-0752-17-0129-I-1, Petition for Review File, Tab 1 at 7.  Two of the appeals previously were joined for adjudication in the Board's regional office, as further explained *infra* ¶ 4.

unacceptable conduct. *Id.* at 34-44. The appellant submitted a written reply and, on February 25, 2014, the agency's Acting Deputy Director for the Office for Human Research Protections issued a decision to remove her from service, effective February 28, 2014. *Id.* at 22-34.

¶3     On March 5, 2014, the appellant and the agency entered into a settlement agreement. 0845 IAF, Tab 18 at 15-20. Under the agreement, the agency agreed to convert the appellant's removal to a resignation effective February 27, 2014, and purge her official personnel folder of documents related to the removal action. *Id.* at 17, 21. She agreed that "any potential complaint, grievance, or any other civil matter stemming from her employment with the Agency and arising prior to the effective date" of the agreement would be "covered and resolved" by the agreement. *Id.* at 15. The appellant also agreed:

> [T]o waive, release, and forever discharge the agency, its officers, agents, employees, and representatives (in their official and/or personal capacities) from any claims, demands, or causes of action, which she has or may have, arising from her employment with the agency, including all whistleblower claims to the extent permitted by law.

*Id.* She affirmed that her resignation under the agreement was voluntary. *Id.* at 16. She also certified that she had read the entire agreement and understood the effect of each provision, including the voluntary resignation and waivers, and that she had freely entered into the agreement. *Id.* at 19. The appellant was represented by counsel when she entered into the settlement agreement. *E.g.*, 0845 IAF, Tab 6 at 74.

The appellant's first two appeals

¶4     On or about April 1, 2016, the appellant filed a complaint with the Office of Special Counsel (OSC), alleging that the agency tried to cause her death in retaliation for alleged whistleblowing. *Anderson v. Department of Health and Human Services*, MSPB Docket No. DC-0752-16-0738-W-1, Initial Appeal File (0738 IAF), Tab 1 at 4, 8. The appellant alleged that she had been one of the

writers of an anonymous letter to President Barack Obama and various legislators in February 2013, reporting unfair treatment, managerial fraud, and managerial theft at the agency. *Id.* at 8, 10-21. After OSC closed its investigation into her complaint, the appellant appealed her allegations of whistleblower reprisal to the Board. *Id.* at 3, 5, 8; 0738 IAF, Tab 5 at 6. In her July 17, 2016 appeal, the appellant asserted that the agency endangered her life during the period prior to her resignation by failing to give her a copy of the Federal Occupational Health (FOH) records that the agency received in connection with her request for a reasonable accommodation based on a disability.[4] 0738 IAF, Tab 5 at 2, Tab 24 at 1-2. The appellant also claimed that the agency denied her right to due process because it should have given her notice of her appeal rights when it denied her request for an accommodation. 0738 IAF, Tab 5 at 2. On August 31, 2016, the appellant filed another appeal pursuant to the Board's adverse action jurisdiction under 5 U.S.C. chapter 75, alleging that she had resigned involuntarily. 0845 IAF, Tab 1. The administrative judge joined the appeals on October 3, 2016. 0845 IAF, Tab 31; 0738 IAF, Tab 25.

¶5      On November 7, 2016, after the parties had submitted evidence and argument on the jurisdictional issues, the administrative judge issued an initial decision that dismissed the appeals for lack of jurisdiction without holding a hearing. 0845 IAF, Tab 56, Initial Decision (0845 ID) at 1, 7. She found that the appellant waived her appeal rights concerning her resignation and exhausted whistleblower reprisal claims in the March 5, 2014 settlement agreement. 0845 ID at 5-6. She determined that the appellant failed to nonfrivolously allege any facts that, if proven, could establish that she entered into the agreement unknowingly or involuntarily. *Id.* On November 17, 2017, the appellant filed a

---

[4] The appellant also asserted that the agency coerced her into signing the settlement agreement, but the administrative judge found this claim was not properly before the Board in her whistleblower appeal because she had not first raised it with OSC. 0738 IAF, Tab 24 at 2.

timely petition for review of that initial decision with the Board. *Anderson v. Department of Health and Human Services*, MSPB Docket Nos. DC-0752-16-0845-I-1 and DC-1221-16-0738-W-1, Petition for Review (0845 PFR) File, Tab 2.[5]

The appellant's third appeal

¶6        On the same day the appellant filed her petition for review of the initial decision, she also filed a new appeal with the Board's regional office. *Anderson v. Department of Health and Human Services*, MSPB Docket No. DC-0752-17-0129-I-1, Initial Appeal File (0129 IAF), Tab 1. In the new appeal, she sought review of a November 7, 2016 final agency decision (FAD) issued in connection with her formal complaint of discrimination against the agency. *Id.* This appeal was assigned to a different administrative judge than the one who had adjudicated her prior two appeals. 0129 IAF, Tab 2. This third appeal generally concerns events related to her application for retirement benefits, which occurred after her separation. *E.g.*, 0129 IAF, Tab 3 at 33-34. She alleged that she was "receiving penalized Regular Retirement [as] oppos[ed] to 'Disability Retirement,' because [her] former Management lied . . . in regards to [her] Reasonable Accommodations request." 0129 IAF, Tab 1 at 6.

¶7        The record shows that, in April 2014, the appellant applied to the Office of Personnel Management (OPM) for disability retirement benefits. 0129 IAF,

---

[5] In April 2021, the appellant filed a request to "submit updated evidence from the Social Security Administration, Disability Division, in regards to [her] former and present medical condition." 0845 PFR File, Tab 13 at 4. She states that the Disability Division "made their assessments by the same physician's prognosis which was submitted to the Agency when [she] requested] [a] [r]easonable [a]ccommodation." *Id.* Although she does not identify when the assessments were made, she asserts that "the evidence will prove that [her] medical documentation was deliberately falsified by [her] former supervisors." *Id.* Because we have joined these matters, *supra* ¶ 1, n.3, we have considered the appellant's request and description of the evidence in all three appeals. However, even if we assume for the purposes of our analysis that the appellant's evidence is new, it does not warrant a different outcome on any of the issues discussed herein. Therefore, we deny her request. 5 C.F.R. § 1201.114(a)(5), (k).

Tab 4 at 7-11.  OPM rendered an initial decision on May 17, 2014, denying her application.[6] *Id.*  On or about May 29, 2014, she contacted an equal employment opportunity (EEO) counselor regarding allegations of disability discrimination and reprisal.  0129 IAF, Tab 7 at 14-15.  After informal counseling failed to resolve her complaint, she filed a formal complaint of discrimination against the agency on or about June 30, 2014.  *Id.* at 10-13.  The EEO complaint generally concerned the manner in which her former supervisor completed retirement paperwork for her in June 2014.  *Id.*  She also claimed that, during discovery in the EEO proceedings, she received, for the first time, documentation dated November 2013 that she alleges previously had been withheld by her former supervisor and was related to her reasonable accommodation request made prior to her separation.  0129 IAF, Tab 10 at 13-16, Tab 11 at 34.

¶8        After accepting written briefs on the jurisdictional issue, the administrative judge issued an initial decision dismissing this third appeal for lack of jurisdiction.  0129 IAF, Tab 16, Initial Decision (0129 ID) at 5.  The administrative judge concluded that, although the appellant had attempted to characterize the action being appealed as an involuntary retirement, she had failed to make a nonfrivolous allegation that her retirement pursuant to the settlement agreement was involuntary.  0129 ID at 4-5.  The administrative judge further found that the FAD addressed discrimination claims concerning actions that were not otherwise appealable to the Board (i.e., the agency's role in completing forms related to her disability retirement application and the denial of her request for reasonable accommodation).  0129 ID at 6.  The administrative judge concluded that, absent an otherwise appealable action, this was not a "mixed case" and the Board could not consider her discrimination claims.  *Id.*

---

[6] Although OPM's initial decision informed the appellant of her right to seek reconsideration of that decision, she explained that she elected not to pursue a challenge to OPM's initial decision because she thought the result would not change because of the retaliatory way her employing agency completed the paperwork.  0129 IAF, Tab 3 at 33-34.

¶9      The appellant has filed a petition for review, the agency has filed an opposition, and the appellant has filed a reply. *Anderson v. Department of Health and Human Services*, Petition for Review (0129 PFR) File, Tabs 1, 4-5.[7]

## ANALYSIS

The appellant's separation from service pursuant to the settlement agreement is not an appealable adverse action.

*Legal standards applicable to constructive removal actions*

¶10     Generally, a Federal employee's decision to resign or retire is not considered to be an appealable adverse action under 5 U.S.C. chapter 75. 5 U.S.C. §§ 7512, 7513(d). The appellant's resignation was a term of the March 5, 2014 agreement, which also contained a term in which she waived "any claims, demands, or causes of action . . . arising from her employment." 0845 IAF, Tab 18 at 15-17, 21. To be an appealable adverse action, a separation by resignation or retirement must have been, in effect, a "removal" action. *See* 5 U.S.C. § 7512; *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶¶ 7, 11 (2013). The settlement agreement was executed prior to the appellant filing a Board appeal, and thus it was not entered into the record of any Board appeal for enforcement purposes. The Board lacks jurisdiction to enforce or invalidate a settlement agreement not incorporated into the record. *Danelishen v. U.S. Postal Service*, 43 M.S.P.R. 376, 379-80 (1990). However, the Board may examine the circumstances surrounding the agreement in considering whether the appellant's separation pursuant to that agreement was tantamount to an appealable removal action imposed by the agency. *See id.* at 380. An appellant meets this burden by

---

[7] After the close of the record on review, the appellant filed a motion for leave to submit alleged new evidence, specifically, an order regarding her discrimination matter received on January 11, 2017, one day prior to the issuance of the initial decision in this appeal. 0129 PFR File, Tab 8. The existing record appears to contain the document to which the appellant refers, and we find it immaterial to the outcome. 0129 IAF, Tab 14. To the extent the appellant is referring to a different document, she has not adequately explained that it is material to the dispositive jurisdictional issues. Accordingly, we DENY her motion to submit additional evidence. 5 C.F.R. § 1201.114(a)(5), (k).

showing that she lacked a meaningful choice because of the agency's improper actions. *Bean*, 120 M.S.P.R. 397, ¶¶ 8, 11.

¶11     The appellant bears the burden of establishing jurisdiction over such an appeal.  5 C.F.R. § 1201.56(b)(2)(i)(A).  If the appellant makes a nonfrivolous allegation of fact relating to jurisdiction, which cannot be resolved simply on the documentary evidence, she is entitled to a hearing on the jurisdictional issues. *See McCall v. U.S. Postal Service*, 839 F.2d 664, 668-69 (Fed. Cir. 1988). A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue.  5 C.F.R. § 1201.4(s).

> *The doctrine of adjudicatory efficiency precludes multiple appeals on the identical issue of whether the appellant's separation was, in effect, an appealable removal action.*

¶12     Both initial decisions contain findings that the appellant failed to make a nonfrivolous allegation that her separation from service pursuant to the settlement agreement was, in effect, a removal action appealable to the Board. 0845 ID at 5-6 (considering the separation as an alleged involuntary resignation); 0129 ID at 3-5 (considering the separation as an alleged involuntary retirement). When an appellant files an appeal that raises claims raised in an earlier appeal after the initial decision in the earlier appeal has been issued, but before the full Board has acted on the appellant's petition for review, it is appropriate to dismiss the subsequent appeal on the grounds of adjudicatory efficiency.  *See Bean v. U.S. Postal Service*, 120 M.S.P.R. 447, ¶ 5 (2013) (explaining that the Board will dismiss on the basis of adjudicatory efficiency when an identity of issues exists and the controlling issues in the appeal will be determined in a prior appeal). To the extent that the appellant raised issues in her third appeal regarding the voluntariness of her separation from service pursuant to the settlement agreement,[8] we find that the administrative judge should have declined to

---

[8] The appellant may not even have intended to re-raise this issue in her third appeal, which followed the FAD on issues raised in her discrimination complaint.

consider them anew in the interest of adjudicatory efficiency. *Id.*, ¶¶ 5-6. We find no basis for considering this issue twice under different labels.[9] Accordingly, we vacate the findings in the January 12, 2017 initial decision regarding the voluntariness of her separation from service because that issue is being determined in her prior appeal. 0129 ID at 3-5. We affirm the finding in the November 7, 2016 initial decision that her separation from service was not a constructive removal action appealable to the Board under 5 U.S.C. chapter 75. 0845 ID at 5-6. We have considered all of the appellant's arguments on this issue, regardless of the appeal in which she filed them. For the following reasons, we affirm the administrative judge's finding that the appellant failed to make a nonfrivolous allegation that she was subjected to a constructive removal within the Board's jurisdiction.

> *The appellant has failed to make a nonfrivolous allegation that her agreement to resign was based on agency fraud, concealment, or misrepresentation.*

¶13      The appellant appears to allege that the agency committed fraud when it concealed evidence from her prior to her acceptance of the settlement agreement. 0845 PFR File, Tab 2 at 8. A party may challenge the validity of a settlement agreement if the party believes that the agreement is unlawful, involuntary, or the

---

0129 PFR File, Tab 1 at 8-9. We find no indication that the appellant ever filed a formal complaint of discrimination regarding her separation from service. The record reflects that her EEO complaint filed on June 30, 2014, concerned the denial of her request for accommodation in 2013 and post-separation events regarding the agency's alleged undermining of her disability retirement application with OPM. 0738 IAF, Tab 9 at 4-5, 8-9.

[9] To be an appealable adverse action, a separation by resignation or retirement must have been, in effect, a "removal" action. *See* 5 U.S.C. § 7512; *Bean*, 120 M.S.P.R. 397, ¶¶ 7, 11. The appellant is not entitled to two Board appeals regarding the same separation from service merely by labelling one as an alleged involuntary "resignation" appeal and the other as an alleged involuntary "retirement" appeal. Her decision to apply for retirement benefits more than 1 month after she already had separated from service is not an independently appealable action and does not affect the dispositive issue of whether her separation pursuant to the terms of the settlement agreement was, in effect, an appealable removal action. *See* 5 U.S.C. §§ 7512, 7701(j).

result of fraud or mutual mistake.  *Bahrke v. U.S. Postal Service*, 98 M.S.P.R. 513, ¶ 11 (2005).

¶14    Many of the appellant's claims in these appeals are based on information that she alleges she discovered approximately 2 years after she entered into the settlement agreement.  0845 PFR File, Tab 2 at 8, 18.  In particular, she claims that her former supervisor improperly concealed from her that, months prior to entering into the settlement agreement, FOH had found her to be an individual with a disability for purposes of the Americans with Disabilities Act Amendments Act of 2008.  *Id.* at 8-9, 13, 18-23; 0129 PFR File, Tab 1 at 17-21, 23-27.  She asserts that this concealment led to a chain of events that ultimately ended with her reluctant acceptance of the settlement agreement.  *E.g.*, 0129 PFR File, Tab 1 at 17-21, 23-27, 32-33, Tab 5 at 8-9, 17.  She claims that she only obtained proof of this concealment of FOH's determination in late 2015, during discovery for her EEO complaint.  0845 PFR File, Tab 2 at 18.  The email messages to which the appellant refers pertain to FOH's recommendation that the agency approve 2 weeks of leave under the Family and Medical Leave Act of 1993 during early 2014, rather than grant the entire accommodation that she requested, which included full-time telework.  0845 IAF, Tab 6 at 29-34, 60-72.

¶15    The record reflects, however, that the appellant knew of the existence of findings from FOH and that she repeatedly sought this information from the agency in the months preceding her acceptance of the settlement agreement.  0738 IAF, Tab 5 at 32-40; 0845 IAF, Tab 6 at 56-64.  She thus could have refused to enter into the settlement agreement until the agency provided the information from FOH.  In these circumstances, the appellant, who was represented by counsel at the time, cannot now claim that this information would have been material to her decision to enter into the settlement agreement.  *See Wobschall v. Department of the Air Force*, 43 M.S.P.R. 521, 524 (finding that the appellant failed to make a nonfrivolous allegation of an involuntary resignation pursuant to a settlement agreement based on alleged breach by the agency, because the

appellant knew of the agency's alleged breach before he tendered his resignation), *aff'd*, 918 F.2d 187 (Fed. Cir. 1990); *see also Melvin v. U.S. Postal Service*, 86 M.S.P.R. 125, ¶ 8 (2000). Accordingly, we find that the appellant has failed to nonfrivolously allege that the agreement should be invalidated based on fraud.

*Alleged breach of the settlement agreement*

¶16 The appellant argues that the agency breached the agreement when her former supervisor sent derogatory information concerning her past disciplinary record to OPM in connection with her retirement application. 0129 IAF, Tab 1 at 61, 63; 0129 PFR File, Tab 1 at 16-17; 0845 PFR File, Tab 2 at 10. When an appellant's resignation or retirement is predicated upon an agreement breached by the agency or a promise the agency did not intend to fulfill, the Board may find the separation from service is involuntary and take jurisdiction over it. *Goodwin v. Department of the Treasury*, 52 M.S.P.R. 136, 141 (1991), *aff'd*, 983 F.2d 226 (Fed. Cir. 1992); *Carter v. Department of the Navy*, 6 M.S.P.R. 95, 96-97 n.1 (1981) (finding that the agency's failure to honor a clean record settlement agreement, after the appellant resigned in reliance on that agreement, rendered his resignation involuntary).

¶17 In the settlement agreement, the agency agreed to expunge all documents related to the removal action from the appellant's official personnel folder. 0845 IAF, Tab 18 at 17. There is no mention in the agreement of the expungement of any other prior disciplinary action against the appellant. Although OPM's May 19, 2014 letter denying her disability retirement application references the appellant's receipt of a May 2013 counseling memorandum and an August 2013 notice of proposed suspension, it does not mention the removal action. 0129 IAF, Tab 4 at 22-27. Indeed, the letter acknowledges the appellant's resignation, citing her Standard Form 50, which states—consistent with the terms of the settlement agreement—that she resigned "to pursue other career opportunities." *Id.* at 24; 0845 IAF, Tab 18 at 17. We find, under these circumstances, that the appellant has failed to

nonfrivolously allege that the agency breached the settlement agreement in this regard.

*Alleged duress, coercion, and intolerable working conditions*

¶18     On review, the appellant renews her arguments that her decision to enter into the settlement agreement and resign was made under duress and based on coercive agency actions, which included barring her from certain agency facilities and withholding notice that it had approved her request for a reasonable accommodation.  0845 PFR File, Tab 2 at 13-15, 18, 22-23.  To establish that a settlement agreement was fraudulent as a result of coercion or duress, a party must prove that she involuntarily accepted the other party's terms, that circumstances permitted no alternative, and that such circumstances were the result of the other party's coercive acts.  *Bahrke*, 98 M.S.P.R. 513, ¶ 11.

¶19     On review, the appellant cites a March 2014 email message regarding settlement matters from her attorney representative to an agency official as documentation of the agency's allegedly improper actions.  0845 PFR File, Tab 2 at 13-14.  In the email message, her attorney stated that he had "dealt with many outstanding [F]ederal officials and employees," but the recipient was "not one of them," and that the recipient likely harbored "both retaliatory and discriminatory animus" toward the appellant.  0845 IAF, Tab 6 at 74.  In the message, the attorney also claimed that the appellant would be signing the settlement agreement under duress from the agency official and that she would like more time to negotiate.  *Id.*  In the same email message, the appellant's representative later indicated that, if the agency made the change he requested to the language of the agreement, then the appellant would sign it.  *Id.*

¶20     As the administrative judge explained, the attorney's negative opinion of the agency official that was expressed in the process of negotiating the language of the settlement agreement does not have the legal effect of converting her knowing and voluntary agreement to the final terms of the settlement to a condition of duress.  0845 ID at 6.  In addition, we find that his statement that the

appellant was signing under duress is not sufficient to raise a nonfrivolous allegation that she involuntarily entered the agreement, especially considering that he made the statement in the course of negotiations and while requesting changes to the language of the agreement that ultimately were made. 0845 IAF, Tab 6 at 74, Tab 18 at 17; *see, e.g.*, *Soler-Minardo v. Department of Defense*, 92 M.S.P.R. 100, ¶ 5 (2002) (holding that an appellant's notation that an action was accepted under duress fails to establish that an acceptance was involuntary); *Koczan v. Department of the Army*, 42 M.S.P.R. 160, 165 (1989) (finding that a settlement agreement signed "under protest" was insufficient to raise an inference of coercion); *Bravman v. Department of the Navy*, 26 M.S.P.R. 169, 171-72 (1985) (holding that a retirement was voluntary despite a handwritten notation on the standard form that it was "involuntary").

### *Mental health conditions and medications*

¶21 The appellant states that she was on strong anxiety medication during the negotiation and execution of the settlement agreement. 0845 PFR File, Tab 2 at 9; 0129 PFR File, Tab 1 at 32-33. She claims that the administrative judge failed to consider the effects of her prescribed medication and that the administrative judge's conclusion that she understood the terms of the agreement was "not necessarily true if he would have taken the time to review [her] medical documentation." 0845 PFR File, Tab 2 at 9; 0129 PFR File, Tab 1 at 32-33.

¶22 When an appellant has alleged emotional distress as a ground for involuntariness, the Board considers whether the appellant was represented, whether she has demonstrated that she was mentally impaired at the time, and whether she has otherwise shown that she was unable to understand fully the nature of the action in question or to assist her representative. *See Sullivan v. Department of Veterans Affairs*, 79 M.S.P.R. 81, 85 (1998). The Board also will review any medical evidence submitted by the appellant to determine whether it is sufficient to show mental incapacity at the time the agreement was signed. *Clede v. Department of the Air Force*, 72 M.S.P.R. 279, 282-83 (1996),

*aff'd*, 113 F.3d 1257 (Fed. Cir. 1997) (Table). To be entitled to a jurisdictional hearing, an appellant needs to do more than make bare assertions of incapacity; she needs to present sufficient evidence supporting such assertions for the Board to conclude that a jurisdictional hearing is necessary. *Id.* at 284.

¶23    Here, the appellant was represented by an attorney during the negotiating and signing of the settlement agreement. 0845 IAF, Tab 6 at 74. We have reviewed the medical documentation she referenced on review, as well as the other documentation submitted throughout her appeal, and we find that it does not suggest that she would have been unable to understand the terms of the agreement when it was entered into on March 5, 2014. 0845 IAF, Tab 18 at 20; 0738 IAF, Tab 5 at 40-47; 0129 IAF, Tab 3 at 84-96. For instance, in a letter from her clinical social worker dated January 31, 2014, approximately 5 weeks prior to signing the agreement, the social worker stated that the appellant would be receiving outpatient treatment for the next 2 to 3 weeks and would be able to return to work after that time. 0129 IAF, Tab 3 at 89. There is no indication in that letter of any possible mental impairment upon her return to work. Further, the appellant has not alleged that either she or her attorney informed the agency that her medical conditions might impair her ability to enter into a binding legal agreement. Indeed, as the administrative judge noted, the agreement contains assertions to the contrary regarding her understanding of the agreement. 0129 ID at 5; 0845 IAF, Tab 18 at 19.

¶24    A party to a settlement agreement is presumed to have full legal capacity to contract unless she is mentally disabled and the mental disability is so severe that she cannot form the necessary intent to enter into the agreement. *Swidecki v. U.S. Postal Service*, 101 M.S.P.R. 110, ¶¶ 18-19 (2006). We find that the appellant's assertions on review are insufficient to raise a nonfrivolous allegation that the settlement agreement and her resulting resignation were involuntary because of her medical condition. *See Clede*, 72 M.S.P.R. at 286 (explaining that the

medical evidence of record did not furnish a nonfrivolous allegation of jurisdiction entitling the appellant to a hearing based on a claim of incapacity).

¶25     Accordingly, after thoroughly reviewing her petitions for review, we find that the appellant has not set forth any basis to disturb the administrative judges' findings that she failed to present a nonfrivolous allegation that her involuntary resignation is within the Board's jurisdiction.

The settlement agreement covers her separation as well as her exhausted whistleblower claims.

¶26     The appellant appears to argue that her claim of involuntary resignation falls within the Board's jurisdiction because it arose "months after" the settlement agreement was executed.  0129 PFR File, Tab 1 at 12-13.  She bases this assertion on the fact that she did not obtain the email records relating to her EEO complaint until late 2015.  *Id.*  In that regard, she alleged in her whistleblower reprisal appeal that the agency made it intolerable for her to stay in her position because it initially did not grant her request for accommodation, it denied her access to medical documentation from FOH assessing her condition and her manager misled her as to FOH's recommendation, and it robbed her of her ability to be rehabilitated when it denied her requested accommodation.  0738 IAF, Tab 5 at 2, Tab 24 at 1-2; PFR File, Tab 2 at 10-13, 17.  She asserts that the Board should hear her claims because she did not waive her rights given the timing of the agency's actions.  PFR File, Tab 2 at 10-13; 0845 PFR File, Tab 2 at 8.

¶27     First, the appellant agreed to resign voluntarily pursuant to the agreement and she has not nonfrivolously alleged that her waiver was involuntary.  0845 IAF, Tab 18 at 15-16; *see Swidecki*, 101 M.S.P.R. 110, ¶ 14.  Second, to the extent that the appellant is claiming that the Board can assume jurisdiction because she did not learn until after she signed the agreement that the agency allegedly mishandled her reasonable accommodation request, we find her argument unavailing.  0845 PFR File, Tab 2 at 7-8.  The settlement agreement states that the appellant "agrees that any *potential* complaint, grievance, or any

other civil matter stemming from her employment with the Agency and arising prior to the effective date" of the agreement was covered under the agreement. 0845 IAF, Tab 18 at 15 (emphasis added).  The agency denied the appellant's request for a reasonable accommodation on November 27, 2013, months *prior to* the effective date of the agreement, March 5, 2014.  0845 IAF, Tab 6 at 33-34, 36-37, Tab 18 at 20.  We find that any claim concerning her reasonable accommodation request stems from her agency employment and that she waived her right to contest it when she entered into the settlement agreement. *See, e.g.*, *Muniz v. United States*, 972 F.2d 1304, 1312-13 (Fed. Cir. 1992) (holding that a collective bargaining agreement's grievance procedures provided the exclusive remedy for a dispute about a retired employee's claim for a lump-sum payment, which claim initially arose while he was still employed and subject to a collective bargaining agreement; disputes concerning such claims could "only be removed from the grievance and arbitration processes by the explicitly and unambiguously declared intention of the parties").  We therefore agree with the administrative judge's finding that the appellant waived her right to pursue these claims and that, therefore, they are barred by the settlement agreement.  0845 ID at 6.

The Board lacks jurisdiction over the alleged discriminatory actions that were the subject of the appellant's EEO proceedings.

¶28      In her third appeal, the appellant alleged that agency officials retaliated against her by filing disability retirement forms, rather than the early retirement forms she requested, when she applied for retirement after her resignation, and that her former supervisor asserted that she was not disabled and addressed disciplinary matters in the agency's documentation for her application for disability retirement.  0129 IAF, Tab 1 at 12-13, 19-20, Tab 7 at 11, 23-26.  We agree with the appellant that the settlement agreement does not preclude her bringing an appeal regarding such matters, which arose after the execution of the settlement agreement.  However, as the administrative judge properly explained,

the agency actions at issue in her EEO complaint are not matters that are independently appealable to the Board.  0129 ID at 5.  Because her discrimination and retaliation claims are not raised in connection with an otherwise appealable action, the administrative judge correctly concluded that this is not a "mixed case appeal."  *See Wren v. Department of the Army*, 2 M.S.P.R. 1, 2 (1980), *aff'd*, 681 F.2d 867, 871-73 (D.C. Cir. 1982); *see also* 29 C.F.R. § 1614.302 (defining a "mixed case appeal" as a Board appeal that alleged that "*an appealable agency action* was effected, in whole or in part, because of discrimination on the bases of race, color, religion, sex, national origin, disability, age, or genetic information") (emphasis added).

¶29     We have reviewed the appellant's remaining arguments and find that none of them provides a basis to disturb the administrative judges' findings that the appellant has failed to present a nonfrivolous allegation of Board jurisdiction.[10] Further, we have reviewed the appellant's alleged new evidence submitted on review and have determined that it is either contained in the record below or is not material to her appeal.  0129 PFR File, Tab 1 at 37-55; 0845 PFR File, Tab 2

---

[10] For instance, the appellant argues below and on review that the Board should consider the factors to assess an appropriate penalty, as set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280. 305-06 (1981), in deciding her appeal. 0845 IAF, Tab 46; 0129 IAF, Tab 3 at 114-122; 0845 PFR File, Tab 2 at 17. However, the Board is without jurisdiction to review the merits of the removal action, including whether the agency properly considered the *Douglas* factors in reaching its removal decision.  *See Burton v. Department of the Air Force*, 118 M.S.P.R. 210, ¶ 16 (2012) (finding that the Board lacks the authority to address the merits of the underlying action when the Board lacks jurisdiction over the appeal).  The appellant further asserts that she was improperly denied "due process" in that the agency failed to provide her Board appeal rights at the time of her removal and that she signed the settlement agreement not knowing that she had any recourse other than resignation. 0845 PFR File, Tab 2 at 8-9.  In apparent contradiction, she also alleges that the agency did not allow her to resign while the notice of proposed removal was pending.  *Id.* at 9. The appellant's claim that she was unaware of her appeal rights is not true, as the decision notice sets forth her Board appeal rights, 0845 IAF, Tab 6 at 23-24, and she offered no evidence supporting her vague assertion that the agency would not allow her to resign.  In any event, all of these matters would have been waived under the settlement agreement.

at 36-55.  Therefore, it provides no basis to disturb the initial decisions.  *Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980) (holding that the Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision); *Meier v. Department of the Interior*, 3 M.S.P.R. 247, 256 (1980) (holding that evidence that is already a part of the record is not new).

### NOTICE OF APPEAL RIGHTS[11]

The initial decisions, as supplemented by this Final Order, constitute the Board's final decision in these matters.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you

receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit

---

[12]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                        /s/ for

                                      Jennifer Everling
                                      Acting Clerk of the Board

Washington, D.C.